## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## HELENA DIVISION

**CEDRIC GLAZE and MAKIELAH GLAZE**                                    **PLAINTIFFS**

**VS.**                              **CASE NO. 2:11CV00082 JLH/HDY**

**RUBEN IVEY**                                                    **DEFENDANT**

### PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Court Judge J. Leon Holmes.  Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.   Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.    Why the record made before the Magistrate Judge is inadequate.

2.    Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted)  was not  offered at  the hearing before the Magistrate Judge.

3.    The detail of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof,  and a copy,  or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary

hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

Plaintiff Cedric Glaze and defendant Ruben Ivey have filed motions for summary judgment in this civil rights action.  Federal Rule of Civil Procedure 56 provides for the entry of summary judgment only in those circumstances where there is no genuine issue of material fact, so that the dispute may be decided on purely legal grounds.

> This may occur when a plaintiff cannot demonstrate that a genuine fact issue exists. But the party opposing the summary judgment must be given the benefit of all favorable factual inferences, and summary judgment cannot be granted when the non-movant shows that an alleged undisputed fact actually presents a triable issue.

*Holloway v. Lockhart, et al.*, 8l3 F.2d 874, 878 (8th Cir. l987) (citations omitted).

**Plaintiff's allegations:**  In his complaint, Mr. Glaze alleges that he was walking with his daughter on Rice Street in Forrest City on June 18, 2009 when defendant Ivey, a patrolman with the Forrest City Police Department, approached him and asked Glaze's purpose for being in the neighborhood.  Glaze states that he told Ivey he had just dropped two kids off and was on his way home with Makielah, his daughter.  Glaze states that Ivey asked a second time while reaching for a set of handcuffs.  When Glaze told Ivey, "I just told you" the answer, Glaze alleges that Ivey grabbed Glaze, causing Makielah to start screaming.  Glaze contends Ivey then started using unnecessary force and abusive language, handcuffed him and grabbed Makielah.  The encounter continued, according to the complaint, with Ivey pushing Glaze to walk and dragging Makielah. Glaze states that Ivey's language was an attempt to provoke Glaze to fight.  Glaze alleges that some neighbors noticed the situation, and one bystander attempted to intervene on Glaze's behalf. According to the complaint, Ivey then pushed Makielah into a house, slammed Glaze to the ground and attempted to arrest the intervening bystander, who evaded capture by running out the back door.

Glaze states that Ivey dragged him to the patrol car and took him to the Forrest City police department.  Glaze states that he asked about Makielah's whereabouts and Ivey indicated she was in an apartment with Naomi Clark, who Ivey identified as Glaze's brother's girl friend.  Glaze made a phone call to a friend who told Glaze that Makielah had been left unattended by Ivey, according to the complaint.  Glaze alleges that he inquired of Ivey of the procedure to be followed when an infant child is with  someone who is arrested, but that Ivey did not respond.  Later, Glaze asked an officer Bryson about speaking with the police chief, and Bryson informed Glaze that the chief was not available.  According to the complaint, Glaze later asked another unidentified officer about the procedure involving placement of a child of an arrested person, and Glaze was told that the other parent or DHS should have been called.  This officer allegedly told Glaze that the chief would not speak with Glaze and that this officer's boss, Edgar Moore, indicated Glaze should get a good lawyer if he wanted to pursue child endangerment charges.

At the trial on July 15, 2009, Glaze contends that Ivey admitted leaving Makielah unattended.  According to Glaze, the trial judge (defendant Steve Routon) made Glaze stop speaking during the trial, and Glaze was found guilty.  Apparently Glaze alleges that officer Ivey was to transport Glaze from court to the jail but Glaze protested and eventually Glaze was charged with disorderly conduct.

In his amended complaint, Mr. Glaze focuses on a variety of claims and defendants covering a lengthy time period.  By previous Order of the Court, multiple defendants and claims were dismissed.  In pertinent part, the amended complaint alleges that Ivey arrested him on February 26, 2011, in retaliation for Glaze's filing of complaints against Ivey with the Mayor, the Chief of Police, and the Prosecuting Attorney (these complaints are the assertions contained in the original complaint and relate to Glaze's June 18, 2009, arrest by Ivey).

**The Motions for Summary Judgment:** Mr. Glaze's *pro se*[1] motion for summary judgment (docket entry no. 48) is a recitation of the allegations contained in the complaint and the amended

---

[1] Counsel was appointed on plaintiff's behalf a few days after he filed his motion for summary judgment.  Docket entry no. 50.

complaint.  Attached as part of the motion for summary judgment is a copy of the arrest report

concerning the June 18, 2009, incident involving Mr. Glaze and Officer Ivey, and a copy of a

Violation Report from the Arkansas Department of Community Correction showing that Glaze was

charged with a parole violation for his arrest on June 18.  There are no affidavits or other documents

attached to the motion for summary judgment.  In a subsequent pleading, Glaze submits an affidavit

from his brother, Chariell Ali Glaze, in support of his motion for summary judgment.   In his

statement, Glaze's brother corroborates some of the plaintiff's assertions, indicating that he saw Ivey

choking and bashing Glaze, as well as dragging Glaze's daughter by the collar.  Further, in a

pleading filed on June 15, 2012, the plaintiff offers his statement of facts in support of his motion

for summary judgment and in opposition to the defendant's motion.  Docket entries nos. 78 & 79.

In these pleadings the plaintiff submits excerpts of depositions from both the plaintiff and his

brother.  The defendant's motion for summary judgment relies upon the same documents, as well

as the arrest report submitted by defendant Ivey.

 The defendant advances several theories to support his entitlement to summary judgment.

We first consider whether summary judgment should be granted due to qualified immunity, guided

by *Saucier v. Katz*, 533 U.S. 194 (2001).

>  *Saucier* provides the marching orders for courts considering qualified
> immunity claims. Under *Saucier,* courts presented with a motion for summary
> judgment on the basis of qualified immunity undertake a two-step inquiry. The
> threshold question asks "[t]aken in the light most favorable to the party asserting
> the injury, do the facts alleged show the officer's conduct violated a constitutional
> right?" 533 U.S. at 201, 121 S.Ct. 2151. If, on the facts as alleged, no
> constitutional violation could be shown were the allegations established, the
> inquiry ends, and the defendant is entitled to qualified immunity. "On the other
> hand, if a violation could be made out on a favorable view of the parties'
> submissions, the next, sequential step is to ask whether the right was clearly
> established." *Id.* The second question must be asked in a "particularized" sense: "
> '[t]he contours of the right must be sufficiently clear that a reasonable official
> would understand that what he is doing violates that right.' " *Id.* at 202, 121 S.Ct.
> 2151 (quoting *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 97
> L.Ed.2d 523 (1987)). That is, the essential question at step two is "whether it
> would be clear to a reasonable officer that his conduct was unlawful in the
> situation he confronted." *Id.*

*Kenyon v. Edwards*, 462 F.3d 802, 805 (8th Cir. 2006).

The *Kenyon* case is instructive, as it, like the instant case, involved a claim of excessive force by a police officer in chaotic circumstances:

> Excessive force claims are analyzed under the Fourth Amendment's reasonableness standard. *Graham v. Connor,* 490 U.S. 386, 394, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In determining whether the amount of force used is reasonable, courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id.* at 396, 109 S.Ct. 1865 (internal quotations and citation omitted). This analysis requires "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* Finally, judges must allow for the fact that police officers often make split-second decisions about the amount of force necessary in tense, uncertain, and rapidly changing circumstances. *Id.* at 396-97, 109 S.Ct. 1865.

*Kenyon v. Edwards*, 462 F.3d at 805 -806.

Here, the facts in the light most favorable to Cedric Glaze are that Officer Ivey encountered Glaze and his three year old daughter around 9 or 10 a.m. on June 18, 2009, on the premises of an apartment complex in Forrest City. When Ivey attempted to engage Glaze, Glaze ignored Ivey and kept walking with his daughter. According to Glaze, Ivey twice asked Glaze to explain why Glaze, who had previously been banned from the property, was present. Glaze did not answer, and Glaze stated he "just went to roughing me up." Docket entry 79-1, page 7. Specifically, Glaze stated that Ivey grabbed his right wrist and handcuffed him behind his back, then began walking Glaze back toward the apartment. Glaze admitted to exchanging words with Ivey and being upset. Glaze states that Ivey was pushing him forward and had Glaze's daughter by the collar as they returned to the apartment. About fifteen to twenty other people appeared on the scene, according to Glaze, including Glaze's brother, who asked Ivey why he was treating Glaze's daughter as he was. According to Glaze, the situation got worse when his brother asked why Ivey was dragging his niece. Ivey then pushed Glaze's daughter into the apartment and

prepared to handcuff Glaze's brother, who ran and avoided apprehension. Glaze states that after pushing his daughter into the apartment Ivey "just picked me up and slammed me on the ground." Docket entry no. 79-1, page 15. After failing to apprehend Glaze's brother, Ivey picked Glaze up and placed him in the police car and transported Glaze to the jail, according to Glaze's deposition testimony. Glaze testified that his injuries consisted of "little scrapes from being in concrete."[2] Docket entry no. 79-1, page 18. Mr. Glaze received numerous charges from the incident: criminal trespass, obstruction of government operations, resisting arrest, and disorderly conduct.

To determine if qualified immunity shields Ivey, the *Saucier* case requires us to answer two questions. The first inquiry is, viewed in the light most favorable to the plaintiff, do the facts alleged show Ivey's conduct violated a constitutional right? We are again guided by *Kenyon v. Edwards*, 462 F.3d 802 (8th Cir. 2006), where the police officer used force against a resisting individual in a "potentially volatile situation." *Id.* at 806. The *Kenyon* Court, applying the factors listed by the Supreme Court in *Graham*, found the officer did not use excessive force. We reach the same conclusion, noting that Mr. Glaze concedes that he resisted Ivey's initial efforts to deal with the problem, that Glaze's brother and others in the crowd verbally challenged Ivey, and that Glaze's brother avoided arrest by fleeing. The atmosphere as described by Glaze was chaotic and hostile to the defendant. Ivey did not use excessive force under the circumstances, and he is entitled to qualified immunity.

Even though the *Saucier* case directs that the two-step analysis ends if the first question

---

[2]The defendant is correct that, at the time of the incident in 2009, the law in the Eighth Circuit was that *de minimis* injuries would not support a section 1983 claim even if the force used by a defendant was excessive. This changed in 2011, with the decision in *Chambers v. Pennycook*, 641 F.3d 898 (8th Cir. 2011). The ruling in *Chambers* was that a reasonable officer could have believed "that as long as he did not cause more than *de minimis* injury to an arrestee, his actions would not run afoul of the Fourth Amendment" and that such an officer was "entitled to have his conduct judged according to that standard for purposes of qualified immunity." 641 F.3d at 908. Officer Ivey, therefore, was entitled to have his 2009 conduct judged by the pre-*Chambers* standard for purposes of qualified immunity. Under this standard, Ivey is entitled to qualified immunity as Glaze's injuries, by his own admission, were minimal.

is answered in the negative, as in this instance, we will continue with the second prong of the analysis, assuming for the sake of argument that the first question was answered in the positive. The second question is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted, and *Saucier* instructs that this question must be asked in a "particularized" sense.  533 U.S. at 202.  When performing this particularized analysis in *Kenyon v. Edwards, supra*, the Court of Appeals focused on the several cases and noted the injuries suffered under the differing circumstances.  For example, in *Goff v. Bise*, 173 F.3d 1068 (8th Cir. 1999), qualified immunity was denied where a police officer arrested the plaintiff, tightly cuffed him, threw him to the ground, and choked him to unconsciousness.  In *Kopec v. Tate*, 361 F.3d 772 (3rd Cir.), *cert. denied*, (2004), a police officer was denied qualified immunity after handcuffing the plaintiff so tightly that he began to faint and writhed in pain on the ground for about ten minutes.  In *Kostrzewa v. City of Troy*, 247 F.3d 633 (6th Cir. 2001), qualified immunity was denied where the officer tightly cuffed the plaintiff and then battered the plaintiff in the back of the squad car by intentionally driving in a reckless manner.  Finally, in *Kukla v. Helm*, 310 F.3d 1046 (8th Cir. 2002), qualified immunity was denied where an officer arrested the plaintiff, forced him against his truck, twisted his arm behind his back in a way that injured his collar bone, and broke his wrist with the handcuffs.  The above cited cases did not involve a "charged and potentially dangerous atmosphere" as experienced in the *Kenyon v. Edwards* case.  The facts in this case fall closer to the facts in *Kenyon* than to the more benign scenarios experienced in the other cases.  As a result, we conclude that a reasonable officer would not have believed that the force exerted by Ivey was unlawful.  Therefore, even assuming that Ivey's conduct violated a constitutional right of Glaze, he was nonetheless entitled to qualified immunity because it would not have been clear to a reasonable officer that such conduct was unlawful under the circumstances.

  While the heart of the complaint and amended complaint is a focus on the force used by Ivey against Glaze on June 18, 2009, there are other claims raised.  Liberally construing the

7

pleadings, the plaintiff alleges Ivey unlawfully arrested him on June 18, 2009.  Ivey, however, is

entitled to judgment as a matter of law on this claim.  Mr. Glaze was arrested on four charges in

connection with the June 18, 2009, incident, and he was convicted of these charges.  The case of

*Heck v. Humphrey*, 512 U.S. 477 (1994), precludes Mr. Glaze from recovering damages in a

civil rights action under these circumstances:

> We hold that, in order to recover damages for allegedly unconstitutional
> conviction or imprisonment, or for other harm caused by actions whose
> unlawfulness would render a conviction or sentence invalid, [footnote omitted] a
> § 1983 plaintiff must prove that the conviction or sentence has been reversed on
> direct appeal, expunged by executive order, declared invalid by a state tribunal
> authorized to make such determination, or called into question by a federal court's
> issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages
> bearing that relationship to a conviction or sentence that has *not* been so
> invalidated is not cognizable under § 1983.

512 U.S. at 486-487.

The plaintiff alleges that his three year old daughter was left unattended after Ivey took

Glaze into custody at the apartment complex.  This allegation, if we assume it to be true, does

not by itself state a claim for relief, in that Mr. Glaze alleges no injury to his daughter as a result

of the alleged action of Ivey.

The plaintiff also alleges that his arrest in 2011 was a retaliatory act by Ivey stemming

from complaints Glaze had filed against Ivey.  This claim fails as a matter of law, as there is no

showing that Ivey lacked probable cause to arrest Mr. Glaze on February 26, 2011.  Ivey's arrest

report states that he smelled marijuana, leading him to approach the vehicle occupied by Glaze

and another individual.  Glaze concedes that he had marijuana in his pocket.  Multiple bags of

marijuana were found in the vehicle.  In addition, a gun was found in the car.  Finally, an

outstanding warrant for the plaintiff's arrest on other charges was in effect.  In summary, Ivey

had probable cause to arrest Glaze in February of 2011.  The plaintiff must plead and prove a

lack of probable cause for the underlying arrest in order to pursue a §1983 claim.  *McCabe v.*

*Parker*, 608 F.3d 1068, 1075 (8th Cir. 2010); *Williams v. City of Carl Junction, Missouri*, 480

F.3d 871, 876 (8th Cir. 2007).  The presence of probable cause for his arrest is fatal to the civil

rights claim stemming from the February 2011 arrest.  Judgment should be entered as a matter of law on this claim.

Summary judgment is appropriate regarding the remaining claims of Mr. Glaze.  For example, the allegation of child endangerment does not amount to a claim for relief under section 1983.  Rather, child endangerment is a state court matter.  Also, there is no allegation or proof that Mr. Ivey was responsible for the alleged delay in Glaze receiving his initial judicial appearance in 2009.  Mr. Glaze concedes that he does not state a claim with regard to the judicial delay issue.  Docket entry no. 78, page 7.  Also, the plaintiff concedes that state tort claims for false imprisonment and false arrest may be barred by a one-year statute of limitations.  The plaintiff "is content with" such claims being dismissed, noting that the main claims of the lawsuit are his federal civil rights violation assertions.  We recommend the state law claims be dismissed without prejudice.

**Summary:** For the foregoing reasons, we recommend that judgment as a matter of law be entered on behalf of the defendant on all claims.

IT IS SO ORDERED this __5__ day of July, 2012.

_____
UNITED STATES MAGISTRATE JUDGE